UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
U.S. COURTHOUSE
402 E. STATE STREET
TRENTON, NEW JERSEY 08608

Hon. Michael B. Kaplan 609-989-0478
United States Bankruptcy Judge 609-989-2259 Fax

June 9, 2011

Michael Leonard Detzky, Esq.
Law Office of Michael L. Detzky
45 Court Street
Freehold, NJ 07728-1709
Attorney for Defendant, Infiniti Capital

Douglas Kahan, Esq.
225 Broadway, Suite 715
New York, NY 10007
Pro Se Defendant

Joel M. Bacher, Esq.
269 Hamburg Turnpike
Wayne, NJ 07470
Attorney for Defendant, Ronald Berman

Margaret Lambe Jurow, Esq.
Legal Services of New Jersey
100 Metroplex Drive
Edison, NJ 08818
Attorney for Plaintiff, Antonio DaSilva

 Re:  DaSilva v. Aries Financial, LLC, *et al.*
 Case No. 08-19547 (RG)
 Adv. Proc. No. 09-01148 (MBK)

Counselors:

 The Court has heard oral arguments and has reviewed the submissions filed in the above-referenced matter.  The Court issues the following ruling to supplement the bench ruling given by telephone on May 24, 2011:

The Court has jurisdiction over this contested matter under 28 U.S.C. §§ 1334(b) and 157(a) and the Standing Order of the United States District Court dated July 10, 1984, referring all bankruptcy cases to the bankruptcy court. This matter is a core proceeding within the meaning of 28 U.S.C. § 157(b)(1)(B). Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

On January 29, 2009, the instant adversary complaint (the "Complaint") was filed by Marie-Ann Greenberg, as Chapter 13 standing trustee, and the Debtor (collectively, the "Plaintiffs"). The Complaint alleges the following counts: (I) Consumer Fraud (N.J.S.A. § 56:8-1, *et seq.*) against Aries Financial LLC, Worldwide Financial Resources, Infiniti Capital, Douglas Kahan, Jeff Hochee, and Ronald Berman; (II) Violation of the Truth in Lending Act by Worldwide Financial Resources and Aries[1] ("TILA"); (III) Violation of the New Jersey Home Ownership Security Act (N.J.S.A. § 46:10B-22, *et seq.*) ("HOSA") by Aries, Worldwide Financial Resources, Infiniti Capital, Jeff Hochee, Albert London and Candace London; (IV) Violations of the Real Estate Settlement Procedures Act (12 U.S.C. § 2601, *et seq.*) ("RESPA") by Aries Financial LLC, Worldwide Financial Resources, Infiniti Capital, Douglas Kahan, Jeff Hochee, and Ronald Berman; (V) Negligence against Ronald Berman and Douglas Kahan; (VI) Common Law Fraud/Fraud in the Inducement against all Defendants[2]; and (VII) Civil Conspiracy against all Defendants.

---

[1] The Complaint alleges that Aries Investments, LLC and Aries Financial Services are alter egos and refers to them collectively as "Aries," but also refers to each individually. Where the term "Aries" is used, the court reads this to refer to both entities, without making a ruling as to whether the two entities are, in fact, alter egos.

[2] The Defendants include the following parties: (i) Aries Financial, LLC; (ii) Aries Investments, LLC; (iii) Albert London; (iv) Candice London; (v) Woldwide Financial Services, Inc.; (vi) Infiniti Capital; (vii) Douglas Kahan; (viii) Jeff Hochee; (ix) Ronald Berman; and (x) John Does 1-5.

2

Before the Court is: (1) a motion for summary judgment to dismiss the Complaint in favor of defendants Aries Financial, LLC, Aries Investments, LLC, Albert London, and Candace London; (2) a motion for summary judgment in favor of the Plaintiffs on Count III of the Complaint; and (3) a motion for summary judgment in favor of defendant Ronald Berman.  This letter opinion grants summary judgment in favor of the Defendants with regard to Counts II and III based on the Court's finding that the credit transaction at issue was extended for business and/or commercial purposes.

**I.     Summary Judgment Standard**

Pursuant to Bankruptcy Rule 7056, Rule 56 of the Federal Rules of Civil Procedure is applicable to adversary proceedings in bankruptcy.  Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056.  Under Rule 56, the Court should grant summary judgment for a movant if the movant demonstrates that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  To meet these requirements, the movant is allowed to rely on the pleadings, depositions, answers to interrogatories, admissions on file, and affidavits.  Id.  To defeat a motion for summary judgment, the opposing party must set forth specific facts showing that there is a genuine issue for trial.  Fed. R. Bank. P. 7056(e)(2). "Where the movant bears the burden of proof at trial and the motion does not establish the absence of a genuine factual issue, the . . . court should deny summary judgment even if no opposing evidentiary matter is presented." Rosen v. Bezner, 996 F.2d 1527, 1530 (3d Cir. 1993) (citing Resolution Trust Corp. v. Gill, 960 F.2d 336, 341 (3d Cir. 1992)).

"A grant of summary judgment is proper only if it appears that 'there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" In re Stephen Yacuk, 72 Fed. App'x. 882, 885 (3d Cir. 2003) (citing Fed. R. Civ. P. 56(c); Fed. R. Bankr. P. 7056).  The Court must view all factually drawn inferences "in the light most favorable to the party opposing the motion" when determining whether any genuine issues of material fact exist.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  There can be "no genuine issue as to any material fact," if a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.  Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (U.S. 1986).  Under such circumstances, the moving party is "entitled to a judgment as a matter of law" because the nonmoving party has failed to make a sufficient showing on an essential element of their case with respect to which they have the burden of proof.  Id. at 323.

**II.    Count II - the Truth in Lending Act ("TILA")**

Count II of the Complaint alleges that defendants Aries and Worldwide Financial Resources violated numerous provisions of TILA by failing to provide certain information to the Debtor.  "Congress enacted the Truth in Lending Act (TILA), 82 Stat 146, in order to promote the 'informed use of credit' by consumers."  Household Credit Servs. v. Pfennig, 541 U.S. 232, 235 (U.S. 2004) (citing 15 U.S.C. § 1601(a)).  As recently explained by the Third Circuit, TILA applies only to consumer credit transactions whereby credit is offered or extended "primarily for

4

personal, family, or household purposes" and "does not apply to 'credit transactions involving extensions of credit primarily for business, commercial, or agricultural purposes.'" St. Hill v. Tribeca Lending Corp., 2010 U.S. App. LEXIS 25058, *7 (3d Cir. Dec. 8, 2010) (citing 15 U.S.C. § 1602(h)). Thus, the critical inquiry is whether the credit transaction at issue was primarily for the Debtor's personal or business use.

In order to evaluate the primary purpose of the loan at issue, the Court must review the transaction as a whole. See St. Hill, 2010 U.S. App. LEXIS 25058, *7 (citing Gombosi v. Carteret Mortg. Corp., 894 F. Supp. 176, 181 (E.D. Pa. 1995), aff'd, 91 F.3d 123 (3d Cir. 1996)). Towards this end, the Court finds instructive the analysis in Gombosi, which provides a thorough discussion of a mortgage loan transaction substantially similar to the transaction in this case. In Gombosi, plaintiffs alleged that defendants violated TILA by, *inter alia*, failing to make required disclosures in connection with a $250,000 loan secured by a mortgage on plaintiffs' principal residence. Gombosi v. Carteret Mortg. Corp., 894 F. Supp. 176, 177 (E.D. Pa. 1995). There, plaintiffs used a significant portion of the loan to: (i) repay a separate loan with Meridian Bank ($65,000); (ii) satisfy an existing mortgage with Keystone Savings Association ($114,622.80); (iii) pay certain fees and closing costs ($14,817.35); and (iv) pay outstanding taxes ($10,261.30). Id. After payment of fees, taxes, and the Keystone Savings Association mortgage, the remaining proceeds of the loan totaled approximately $110,000, $105,000 of which the court found was used for business purposes. Id. at 181. In considering the transaction as a whole, the court reasoned as follows:

> Although the refinancing of a residential mortgage would in many cases be a loan for personal purposes, that is not the situation in this case. The Gombosis were not

5

refinancing to obtain a more favorable interest rate or to obtain lower monthly payments, but were instead refinancing at an interest rate that was a full percentage point higher than that of the existing Keystone Savings Association mortgage. Furthermore, the satisfaction of the Keystone Savings Association mortgage was an express loan condition so as to create a first mortgage lien position on the Gombosis' residence in favor of Carteret Savings Bank, F.A. Similarly, the payment of outstanding taxes was a necessary prerequisite to protect the first mortgage rights of Carteret. All these facts indicate that the refinancing of an existing residential mortgage and the making of tax payments were not the primary purpose of the Carteret loan. Rather, the primary purpose of the Carteret loan was to acquire the remaining proceeds after the satisfaction of all the conditions of obtaining the loan. Thus, we find that the disposition of those remaining proceeds must weigh heavily in determining the primary purpose of the Carteret loan.

Gombosi, 894 F. Supp. at 181.

The instant case is analogous to Gombosi. In 2001, the Debtor transferred real property located at 222 Stewart Ave, Kearny, Hudson County, New Jersey (the "Property") from his mother's name into his own name in order to obtain credit for his fashion business.[3] See Responses for Defendants to Counter-Statement of Disputed Facts at 2, DaSilva v. Aries Fin. LLC, No. 09-01148 (Bankr. D.N.J. Feb. 22, 2011), Docket No. 71. Indeed, by transferring the Property into his name the Debtor was able to obtain: (1) an initial loan on the Property for $40,000; (2) a second loan for his business; (3) $12,000 from CitiBank; and (4) $13,000 from Citi Financial, all of which were used to finance the Debtor's business. See Reply Brief in Support of Motion for Summary Judgment at 14-16, DaSilva v. Aries Fin. LLC, No. 09-01148 (Bankr. D.N.J. Feb. 22, 2011), Docket No. 71. Subsequently, the Debtor experienced financial

---

[3] "When I first introduced my collection in New York on Fashion week, you know, it was very successful. Except when I got that loan that equity from my house I put it correctly on the stuff, I create a line, I have a showroom." Responses for Defendants to Counter-Statement of Disputed Facts at 3, DaSilva v. Aries Fin. LLC, No. 09-01148 (Bankr. D.N.J. Feb. 22, 2011), ECF No. 71.

6

difficulties and actively sought the $325,000[4] loan at issue from Aries Financial in order to prevent imminent foreclosure on his house, which would have directly impacted the Debtor's ability to repay the aforementioned loans utilized for his business. As such, the Court finds that, like the holding in Gombosi, the credit transaction was not a transaction intended to refinance a mortgage for a lower rate but rather an attempt to save the Debtor's business.

In light of the foregoing, Plaintiffs have presented no facts by which a reasonable jury could reach the conclusion that the loan was primarily personal, an element essential to a TILA claim. Following the Gombosi approach, therefore, the Court concludes that the primary purpose of the loan at issue was for business or commercial purposes and not for personal use. Accordingly, Plaintiffs cannot maintain a TILA cause of action and the Court grants summary judgment in favor of the Defendants with respect to Count II of the Complaint.

### III.    Count III - New Jersey Home Ownership Security Act

Plaintiffs further allege that defendants Aries Financial LLC, Worldwide Financial Resources, Infiniti Capital, Jeff Hochee, Albert London, and Candace London are creditors subject to liability under the New Jersey Home Ownership Security Act (N.J.S.A. § 46:10B-22, *et seq.*) ("HOSA"). As echoed by the New Jersey legislature, the intent of HOSA is to "prohibit[] certain practices in the making of home mortgage loans." S. 198/1200/1540/2051, 2002 Leg., (N.J. 2002). "The Act designates three classes of loans - "Home Loans," "Covered

---

[4] After deducting settlement charges on the loan transaction, the Debtor received a net disbursement of $255,844.09, of which $251,703.42 was paid to secured and unsecured creditors. Responses for Defendants to Counter-Statement of Disputed Facts at 3-12, DaSilva v. Aries Fin. LLC, No. 09-01148 (Bankr. D.N.J. Feb. 22, 2011), Docket No. 71; Amended Statement of Undisputed Facts in Support of Motion for Partial Summary Judgment for Affirmative Relief on the Third Count of His Adversary Complaint at 4, DaSilva v. Aries Fin. LLC, No. 09-01148 (Bankr. D.N.J. Feb. 22, 2011), Docket No. 53.

Home Loans" and "High Cost Home Loans" - and subjects creditors who issue them, as well as the secondary market investors who purchase them, to increasing levels of regulation." Baher Azmy & David Reiss, Modeling a Response to Predatory Lending: The New Jersey Home Ownership Security Act of 2002, 35 RUTGERS L.J. 645, 671 (2004); see also O'Brien v. Cleveland (In re O'Brien), 423 B.R. 477, 498 (Bankr. D.N.J. 2010), aff'd, No. 10-3169, 2010 U.S. Dist. LEXIS 120220 (D.N.J. Nov. 12, 2010) ("HOSA, as amended in 2004, regulates 'home loans' and 'high-cost home loans'").

With regard to Count III of the Complaint, the Plaintiffs base their claim on, *inter alia*, N.J.S.A. § 46:10B-33, which provides as follows:

> Notwithstanding any provision of this act to the contrary, a mortgage broker shall be liable under the provisions of this act only for acts performed by the mortgage broker in the course of providing mortgage brokering services. However, a mortgage broker may be held liable for acts performed by the mortgage broker outside the scope of mortgage brokering services if the acts are related to the purchasing or the making of a home loan and are otherwise prohibited under this act.

See N.J.S.A. § 46:10B-33. The first sentence in this subsection makes clear that, with limited exceptions, mortgage brokers may be held liable "only for acts performed by the mortgage broker in the course of providing mortgage brokerage services." Id. Based on the evidence presented, however, the Court finds that Plaintiffs have not demonstrated circumstances by which HOSA is applicable. Because the Court has determined that the primary purpose of the loan at issue was for business or commercial purposes and not for personal use, the Court finds that such credit transaction is not the type of transaction intended to be regulated by HOSA.

Therefore, the Court grants summary judgment in favor of the Defendants with regard to Count III of the Complaint.

## IV. Conclusion

The Court views all factually drawn inferences in the light most favorable to the Plaintiffs and concludes that the proceeds from the loan in the instant mortgage transaction were used primarily for business or commercial purposes. The Court relies primarily upon the Debtor's own testimony in reaching this conclusion. Accordingly, the Court determines that Plaintiffs have failed to set forth specific facts demonstrating that there is a genuine issue for trial with regard to Counts II and III of the Complaint, as required by Fed. R. Bank. P. 7056(e)(2). Accordingly, the following causes of action alleged in the Complaint remain to be tried: (i) Count I - Consumer Fraud (N.J.S.A. § 56:8-1, *et seq.*) against Aries Financial LLC, Worldwide Financial Resources, Infiniti Capital, Douglas Kahan, Jeff Hochee, Ronald Berman; (ii) Count V - Negligence against Ronald Berman and Douglas Kahan; (iii) Count VI - Common Law Fraud/Fraud in the Inducement against all Defendants; and (iv) Count VII - Civil Conspiracy against all Defendants.[5]

Honorable Michael B. Kaplan
United States Bankruptcy Judge

---

[5] The Court has confirmed with all counsel that Count IV of the Complaint for violations of the Real Estate Settlement Procedures Act (12 U.S.C. § 2601, et seq.) ("RESPA") has been withdrawn with prejudice.